UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ELIZABETH CANNON,<br><br>    Plaintiff<br><br>v.<br><br>ANDERSON BUSINESS ADVISORS LLC,<br><br>    Defendant | Case No.: 2:18-cv-01599-APG-VCF<br><br>**Order Granting in Part Motion for Summary Judgment**<br><br>[ECF No. 111] |

    Plaintiff Elizabeth Cannon is a former employee of defendant Anderson Business Advisors LLC (Anderson). She sues Anderson for alleged violations of the Family Medical Leave Act (FMLA), breach of contract, and breach of the implied covenant of good faith and fair dealing. Cannon asserts that Anderson interfered with her taking of FMLA leave for a medical condition and terminated her employment in violation of the FMLA. Anderson moves for summary judgment on each claim. The parties are familiar with the facts, so I do not repeat them here except where relevant. I deny Anderson's motion for summary judgment on the FMLA claims because genuine issues of material fact remain. I grant the motion for summary judgment on the breach of contract and bad faith claims.

**I. ANALYSIS**

    Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

**A. Rule 26**

Anderson argues that because Cannon did not disclose her doctor as a witness, Cannon's statements relaying what the doctor said and the doctor's note are both inadmissible. Anderson also contends that it is entitled to summary judgment on each claim because Cannon failed to disclose a computation of damages. Cannon does not respond to these arguments.

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires a party to provide "a computation of each category of damages claimed by the disclosing party." Rule 26(a)(1)(A)(i) requires a party to provide "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." And Rule 26(a)(2) governs the disclosure of expert testimony. Rule 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Where a Rule 37 "sanction amount[s] to dismissal of a claim, the district court [is] required to

consider whether the claimed noncompliance involved willfulness, fault, or bad faith, . . . and also to consider the availability of lesser sanctions." *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012) (citations omitted).

Anderson has not moved to exclude evidence of damages or the witness under Rule 37. Consequently, I am unable to make the findings required to exclude the witness or damages at this stage. While it appears there are Rule 26 violations, the damages and witness could in theory evade exclusion under Rule 37. "Exclusion sanctions are not a foregone conclusion if substantial justification or harmlessness have not been established." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017). And I am required "to consider the availability of lesser sanctions" if a sanction amounts to dismissal. *R & R Sails*, 673 F.3d at 1247. I may therefore consider damages and evidence based on the doctor's statements, at least at this stage.

**B. FMLA Interference**

Cannon asserts that Anderson interfered with her taking FMLA leave. Anderson argues it is entitled to summary judgment on this claim because there is no evidence that Cannon timely requested FMLA leave or that her surgery would have qualified for it. Cannon responds that genuine issues of material fact exist.

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). A claim alleging a violation of § 2615(a)(1) "is known as an 'interference' or 'entitlement' claim." *Sanders v. City of Newport*, 657 F.3d 772, 777–78 (9th Cir. 2011) (citation omitted). For an FMLA interference claim, "an employee must establish that '(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to

take leave, and (5) his employer denied him FMLA benefits to which he was entitled.'" *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (quoting *Sanders*, 657 F.3d at 778). Anderson moves for summary judgment based on the elements of notice and entitlement to leave.

### 1. Notice

Anderson contends that Cannon asked for "time off" and admitted in her deposition that she "wasn't looking at taking unpaid [leave]," so that means she did not request FMLA leave and did not provide sufficient notice of her intent to take FMLA leave. ECF No. 111 at 8. Cannon responds that she applied for "FMLA leave for a personal medical condition that began on February 16, 2018." ECF No. 117 at 21.

"In order to establish an FMLA violation, the employee must demonstrate that the employer received sufficient notice of an employee's intent to take FMLA leave." *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). "Employees need only notify their employers that they will be absent under circumstances which indicate that the FMLA might apply[.]" *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001).

A reasonable jury could find that Cannon provided Anderson with sufficient notice. The notice inquiry does not hinge on Cannon's testimony that she was not seeking to take unpaid leave because she had vacation time. ECF No. 117-2 at 253. "It is the employer's responsibility to determine when FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1134 (9th Cir. 2003). Rodney Truman, Anderson's human resources manager, stated that Cannon informed Dan Ollman, her manager, on February 15 that she needed the next

day "off for cosmetic surgery and it was approved." ECF No. 117-2 at 50. Cannon testified that she told Ollman on February 14, the day of her appointment with the surgeon, that she "needed medical time off" for surgery in two days and she "didn't know how long" it would be. *Id.* at 252. She also testified that she told Ollman she "wouldn't know anything until Monday" and she "was going to talk with the doctor." *Id.* at 247-48, 252. According to Cannon, she told Ollman that the surgeon did not yet know "how bad the damage" would be, and Ollman told her not to worry about it. *Id.* at 248-49. Cannon stated that she told Ollman on Monday that the infection was "bad" and she "would be wearing . . . drains, it could be weeks." *Id.* at 259.

Arguing that Cannon did not request leave for her surgery, Anderson points to an FMLA form completed by an Anderson representative suggesting that Cannon stated on January 30, 2018 that she needed leave to care for a parent. ECF No. 112-1 at 41. However, it is unclear what effect, if any, a separate alleged FMLA request has on notice regarding her surgery. Viewing the evidence in the light most favorable to Cannon, there is a genuine dispute whether she notified Ollman that she "will be absent under circumstances which indicate that the FMLA might apply." *Bachelder*, 259 F.3d at 1130.

          2.   *Whether Cannon Was Entitled to Leave Under the FMLA*

Anderson next argues that "there is no admissible or competent evidence to prove" that the procedure Cannon underwent would have qualified for FMLA leave. ECF No. 111 at 8. It contends that Cannon's description of what her medical providers told her is inadmissible hearsay, and Cannon did not "submit medical records and expert testimony" to prove that her surgery would have been covered by FMLA. *Id.* at 8-9. Cannon responds that she was eligible for FMLA leave because she had a serious medical condition.

Eligible employees are entitled to FMLA leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  Under the FMLA, a serious health condition includes "an illness, injury, impairment, or physical or mental condition" involving "continuing treatment by a health care provider." *Id.* § 2611(11)(B).  "The term treatment includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R. § 825.113(c).

Cannon testified that she was "always tired" since December 2017, when she started having problems with her implants. ECF No. 117-2 at 243.  She further testified that after seeking treatment on February 14, 2018, she had surgery on Friday, February 16, saw her surgeon again on Monday, and "wore drains for three weeks" to treat her condition. *Id.* at 241-42, 246-48, 254.  I also may consider testimony based on the doctor's statements, given my decision not to exclude Cannon's doctor at this stage.  Cannon testified that her doctor stated she was "encapsulating," her implants needed to be taken out, and they were "making [her] sick." *Id.* at 242.  According to Cannon, the doctor stated at her appointment on Monday that she was not ready to go back to work. *Id.* at 248.  Based on the evidence before me, I cannot conclude as a matter of law that Cannon did not experience a serious health condition as defined by the FMLA. I therefore deny Anderson's motion for summary judgment on this basis.

**C.  FMLA Interference Based on Termination**

Cannon asserts that she was terminated because she requested and used FMLA-protected leave. ECF No. 1 at 5.  Anderson argues that Cannon's text messages to Ollman, Truman's testimony, and a warning Cannon received show that she was terminated due to attendance issues.  Cannon responds that genuine issues of material fact exist.

Under the FMLA, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). "An allegation of a violation of this section is known as a 'discrimination' or 'retaliation' claim." *Sanders*, 657 F.3d at 777 (citation omitted). This provision "do[es] not cover visiting negative consequences on an employee simply because he has used FMLA leave." *Bachelder*, 259 F.3d at 1124 (9th Cir. 2001). Instead, "[s]uch action is . . . covered under § 2615(a)(1)," which governs FMLA interference. *Id.* (citations omitted).

Cannon does not contend that she was "punished for *opposing* unlawful practices by" Anderson. *Xin Liu*, 347 F.3d at 1135 (citation omitted). Because this claim is styled as a retaliation claim but is properly understood as an interference claim, I will evaluate it as an FMLA interference claim. *See id.* at 1134 n.8, 1135-37 (analyzing the claim as an interference claim even though the plaintiff "misidentifie[d]" it as a retaliation and discrimination claim); *Sutton v. Derosia*, No. 1:11-CV-01426-LJO, 2012 WL 4863788, at *9 (E.D. Cal. Oct. 12, 2012) ("Although plaintiff labels her claim as a retaliation claim, it is actually an interference claim."); *Sims v. Stillwater Mining Co.*, No. CV 17-109-BLG-TJC, 2019 WL 4142506, at *5 (D. Mont. Aug. 30, 2019) ("Although pled as a retaliation claim, Sims' claim falls within the purview of interference under 29 U.S.C. § 2615(a)(1).").

"[T]he standard set forth . . . in 29 CFR § 825.220(c)" applies "[w]here an employee alleges that his or her FMLA leave is impermissibly considered in the decision to terminate him or her." *Xin Liu*, 347 F.3d at 1135. To "prevail on a claim that an employer interfered with her rights by terminating her in violation of FMLA," an employee must show "'by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her.'" *Id.* at 1136 (quoting *Bachelder*, 259 F.3d at 1125). An employee

"can prove this claim . . . by using either direct or circumstantial evidence, or both." *Bachelder*, 259 F.3d at 1125 (citations omitted).

Anderson asserts that it terminated Cannon due to attendance issues, but genuine disputes of material fact remain. First, there is a dispute whether Cannon was a "no call, no show." Truman testified that Cannon was "terminated for attendance issues," "did not show up for work," and "was a no call no show" on Monday, Tuesday, and Wednesday. ECF Nos. 117-2 at 20; 112-1 at 11. However, Cannon testified that she worked from home on those days, had agreed with Ollman that she "would work from home," and called Ollman on Monday to tell him the infection was "bad" and she "would be wearing these two drains, it could be weeks, it could be longer." ECF No. 117-2 at 253, 256, 259. Truman also stated that when Ollman "reached out to" Cannon on Tuesday, "she indicated to him that she wasn't feeling well and would not be into work." *Id.* at 81. Anderson points to Cannon's text message to Ollman stating that she would go to work on Wednesday and argues that she did not ultimately go. ECF No. 112-1 at 44. Cannon testified that she said that because she "had finally taken [her] pain medicine" and "felt really good," so she intended to go to work. ECF No. 117-2 at 263-64. Cannon argues that Ollman knew she was not going to work on February 21. When asked how she communicated that, Cannon stated that she did not remember who she told, but that she believed it was one of two individuals. *Id.* at 260. She also testified that on February 21, she informed Ollman that she would not go to work "either through talking with him or through Sydney," who was her "admin." *Id.* at 260, 266. Cannon has pointed to evidence showing a genuine dispute of material fact.

Second, there is a dispute as to why Anderson terminated Cannon instead of giving her a Level 2 warning. Truman stated that Cannon "missed a lot of time from the office and she had

8

been warned previously that she needed to be in the office [to] work and she failed to do so." *Id.* at 21.  This testimony is related to Anderson's argument that the written warning Cannon received demonstrates she was fired because of attendance problems.  The warning from Ollman is dated January 29, 2018, and it states that Cannon received a "Level 1 Verbal Warning" for "not notifying manager (sic) intent to work from home.  Has happened before—far too many days away from office!" ECF No. 112-1 at 36.  The "Plan for Improvement" section states, "work from Anderson location . . . .  In the <u>rare</u> case you need to work elsewhere, you get prior approval from Dan Ollman." *Id.*  And the "Consequence(s) of Further Infraction" section states, "Level 2 written warning—remove from event calendar." *Id.*  It is unclear what "remove from event calendar" specifically means, and Cannon stated that she does not know and has "never seen that." ECF No. 117-2 at 237.  Truman stated he is not aware of Cannon ever receiving a Level 2 written warning.[1] *Id.* at 34.  He also stated that Anderson "can fire someone after the first warning or without a warning," but he did not explain the discrepancy between the consequences described in the written warning and the decision to terminate Cannon. *Id.*  Drawing inferences in Cannon's favor, a reasonable jury could find that her leave was a negative factor in the decision to skip the Level 2 warning and instead terminate her.

     Lastly, temporal proximity shows that a genuine dispute exists as to whether Cannon's taking of leave was a negative factor in Anderson's decision to terminate her employment.  Cannon testified that she had surgery on Friday and "worked Monday and Tuesday and Wednesday from home." ECF No. 117-2 at 253.  Truman stated that Cannon was then terminated on Wednesday, February 21. *Id.* at 18, 50.  And Cannon testified that she realized she

---

[1] Anderson states that it issued "Plaintiff a level 2 written warning" on January 30, 2018, but the exhibit it cites states "Level 1 Verbal Warning." ECF Nos. 111 at 3; 112-1 at 36.

was terminated on February 21. *Id.* at 266-68. "[T]he proximity in time between the leave and her termination . . . provides supporting evidence of a connection between the two events." *Xin Liu*, 347 F.3d at 1137 (citation omitted). I deny Anderson's motion for summary judgment on this claim.

### D. Remaining Claims

Cannon asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Her complaint alleges that "if she wrote a specified amount of business, over $1,000,000, in a specified period of time, . . . Anderson would provide her with a monthly allowance for a vehicle lease in the amount of $750." ECF No. 1 at 5-6. Cannon contends that Anderson breached this contract "by failing to provide [her] with a monthly vehicle allowance following her termination." *Id.* at 6. Her bad faith claim arises out of the same allegations. *Id.*

Under Nevada law, a plaintiff in a breach of contract action must show: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006) (citation omitted). A covenant of good faith and fair dealing is implied into every contract. *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993) (citations omitted). "Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991).

Anderson argues that Cannon has not proved the existence of a contract "that provided for continued payment of any car allowance to Plaintiff independent of her continued employment with Anderson." ECF No. 111 at 11. Anderson contends that there is no evidence

describing the terms of the car allowance or showing mutual assent between Cannon and Anderson. *Id.* Cannon responds that "[t]his is a simple credibility issue," and Cannon can testify on this matter at trial. ECF No. 117 at 28.

The only evidence Cannon points to is her testimony that some of her requested damages are for breach of contract and the loss of her car. ECF No. 117-2 at 315-16. Cannon also testified that as part of her compensation in 2017, Anderson "added in a car allowance" that she could earn by "writ[ing] a net of 1.6 [million] by the end of the year to receive the 750 each month the following year." *Id.* at 216. However, there is no evidence proving the existence of a contract for Cannon to receive the car allowance after termination. Accordingly, I grant Anderson's motion for summary judgment on this claim. And because Cannon offers no evidence why this term should be implied into the contract (or how Anderson contravened the spirit of its contract with Cannon), I also grant Anderson's motion for summary judgment on that claim.

## II. CONCLUSION

I THEREFORE ORDER that defendant Anderson Business Advisors LLC's motion for summary judgment **(ECF No. 111) is GRANTED in part**. The motion is denied as to the FMLA claims and granted as to the breach of contract and bad faith claims.

DATED this 9th day of March, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE